UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Case No. 1:21CR27MSM-PAS |
| v. | Violations: |
| GREGORY ALOISIO<br>ALOISIO GROUP, LLC<br>JOHN DIFRUSCIO, JR. | 18 U.S.C. § 1349 - (Conspiracy)<br>18 U.S.C. § 1344 - (Bank Fraud)<br>18 U.S.C. § 1343 – (Wire Fraud)<br>18 U.S.C. § 1956 – (Money Laundering) |

## INDICTMENT

The Grand Jury charges that:

### COUNT 1
(Conspiracy to Commit Bank Fraud and Wire Fraud)

At all times relevant to this Indictment, unless herein stated:

### The Defendants and their Associates

1. Defendant GREGORY ALOISIO ("ALOISIO") was a real estate investor who did business in the state of Rhode Island.

2. Defendant ALOISIO GROUP, LLC, was a Rhode Island real estate investment corporation created by ALOISIO in 2008. ALOISIO was its manager and sole principal.

3. ALOISIO GROUP acquired properties in short sales [hereinafter "the Target Properties"] under the name of ALOISIO GROUP, but otherwise did business under the name Quietstorm Professional Services ("Quietstorm"). ALOISIO portrayed

Quietstorm to be a business that negotiated short sales on behalf of homeowners, separate from and unaffiliated with ALOISIO GROUP.

4. A short sale is a sale of real estate in which the net proceeds from selling the property will fall short of the debts secured by liens against the property. If all lien holders agree to accept less than the amount owed on the debt, a sale of the property can be accomplished.

5. Defendant JOHN DIFRUSCIO, JR. ("DIFRUSCIO") held himself out as a short sale negotiator working for Quietstorm. He purported to negotiate short sales on behalf of the selling homeowner, but he actually worked on behalf of ALOISIO GROUP, the short sale purchaser, so that ALOISIO GROUP could acquire the Target Properties at the lowest possible price.

6. F.B. and A.C. were licensed real estate brokers or agents in the state of Rhode Island who worked for ALOISIO. They listed the Target Properties for sale on the Multiple Listing Service ("MLS") at the request of ALOISIO after ALOISIO GROUP had already agreed to purchase the Target Properties.

7. R.M. was an attorney licensed in the State of Rhode Island. R.M., acting as the settlement agent on behalf of ALOISIO GROUP, conducted real estate closings and issued title insurance in connection with mortgage loans related to the Target Properties.

## The Victims

8. The victim homeowners, including O.A., G.T., H.G., J.I. and others, owned the Target Properties, but could not afford their monthly mortgage payments and/or sought to modify their mortgage loans.

9. The victim prospective homeowners, including A.L. and others, participated in the defendants' "rent-to-own" program in the hopes of purchasing the Target Properties.

10. The victim lenders, JPMorgan Chase ("JPMorgan"), Wells Fargo Bank, N.A. ("Wells Fargo"), Citizens Bank, N.A. ("Citizens"), Bank of America, N.A. ("BOA"), and PNC Bank, N.A. ("PNC"), were financial institutions doing business in the District of Rhode Island whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC").

11. Victim 21st Mortgage Corporation ("21st Mortgage"), a mortgage lending business, was a financial institution doing business in the District of Rhode Island.

12. Fay Servicing, LLC was a mortgage servicer and originator with offices in Illinois and elsewhere.

13. The United States Department of Housing and Urban Development ("HUD") provides mortgage loan insurance for qualifying residential real estate loans to individuals with low or moderate incomes. The insurance is provided through the Federal Housing Administration ("FHA"), a component of HUD, and the loans are financed through private financial institutions. The FHA provides mortgage insurance

for the loan amount used to purchase real property. When a house originally purchased with an FHA insured mortgage is sold in a short sale, the lender may submit a claim to the FHA for reimbursement of its loss.

## The Conspiracy

14. Beginning on or about January 1, 2011 and continuing until a date unknown, but at least as late as on or about October 30, 2017, in the District of Rhode Island and elsewhere, defendants

> GREGORY ALOISIO
> ALOISIO GROUP, LLC
> and JOHN DIFRUSCIO, JR.

did knowingly, willfully, and unlawfully combine, conspire and agree with each other and with others known and unknown to the Grand Jury to commit in connection with the purchase and sale of residential real estate:

   a. Bank fraud by knowingly executing and attempting to execute a scheme and artifice to defraud financial institutions, namely, the following victim lenders: JPMorgan Chase, Wells Fargo Bank, N.A., Citizens Bank, N.A., Bank of America, N.A., PNC Bank, N.A., and 21st Mortgage Corporation, and to obtain moneys, funds, assets, and other property owned by, and under the custody and control of said financial institutions by means of materially false and fraudulent pretenses, representations, and promises, contrary to 18 U.S.C. § 1344.

   b. Wire fraud by devising a scheme to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises, from distressed homeowners, prospective homeowners, and financial institutions, and for the purpose of executing such scheme, did cause to be transmitted by means of wire communication in interstate commerce signals and sounds, contrary to 18 U.S.C. § 1343.

## Purpose of the Conspiracy

15. The purpose of the conspiracy was for the co-conspirators to unlawfully enrich themselves by:

   a. Fraudulently obtaining the use and enjoyment of the Target Properties from distressed homeowners;

   b. Fraudulently obtaining fees, commissions, and other income associated with the rental, use, and short sale of the Target Properties; and,

   c. Fraudulently purchasing the Target Properties in short sales and then illegally "flipping" or selling the Target Properties for significant profits.

## Manner and Means of the Conspiracy

The manner and means by which the co-conspirators sought to accomplish and did accomplish the purpose of the conspiracy included, among others, the following:

16. It was part of the conspiracy that the co-conspirators held themselves out as real estate negotiators who could assist the victim homeowners in saving their homes from foreclosure.

17. It was further part of the conspiracy that the co-conspirators collected fees from the victim homeowners who sought the co-conspirators' help in saving their homes from foreclosure.

18. It was further part of the conspiracy that the co-conspirators convinced the victim homeowners to transfer title to their homes, the Target Properties, to DIFRUSCIO as trustee of a family trust.

19. It was further part of the conspiracy that the co-conspirators convinced the victim homeowners to authorize DIFRUSCIO to negotiate short sales with the homeowners' lenders.

20. It was further part of the conspiracy that the co-conspirators convinced or attempted to convince the victim homeowners to move out of their homes so that the co-conspirators could lease the Target Properties to others.

21. It was further part of the conspiracy that the co-conspirators collected rent from tenants residing in the Target Properties. Some tenants paid rent as part of a fraudulent "rent-to-own" program and some tenants were victim homeowners who had not moved out of the Target Properties. The co-conspirators used the rental income for their own benefit.

22. It was further part of the conspiracy that DIFRUSCIO, while purportedly working on behalf of the victim homeowners, negotiated short sales of the Target Properties on behalf of ALOISO GROUP, the prospective short sale purchaser. DIFRUSCIO fraudulently induced the victim lenders to agree to the lowest possible price for the benefit of ALOISIO GROUP and ALOISIO, thereby causing the victim lenders to incur a greater loss.

23. It was further part of the conspiracy that ALOISIO directed F.B. and A.C. to list the Target Properties on MLS, but to immediately reflect that a sale was pending so that no other offers would be made, thereby ensuring that ALOISIO GROUP's short sale offer was the only offer for the victim lenders to accept.

24. It was further part of the conspiracy that F.B. and A.C., at the direction of ALOISIO, took no steps to market the Target Properties on the open market, thereby ensuring that ALOISIO GROUP's short sale offer was the only offer for the victim lenders to accept.

25. It was further part of the conspiracy that before acquiring the Target Properties in short sale purchases, the co-conspirators arranged to sell or "flip" the Target Properties to another purchaser at a higher price. Sometimes the purchaser in the "flip" was the original victim homeowner or his or her relative.

26. It was further part of the conspiracy that the co-conspirators submitted, and caused to be submitted, false documents, including false Affidavits of Arm's Length Transaction, to the victim lenders. The co-conspirators submitted the false documents to fraudulently induce the victim lenders to approve the short sales. The false documents included the following misrepresentations among others: (1) that there was no commercial relationship between the parties; (2) that the Target Properties were marketed on the open market in arm's length transactions; and (3) that there was no agreement to "flip" or rent the Target Properties after the short sale to the victim homeowner.

27. It was further part of the conspiracy that the co-conspirators caused false HUD-1 Settlement Statements to be submitted to the victim lenders. The Settlement Statements falsely represented some or all of the following: (1) the identity of the seller; (2) the identity of the buyer; and (3) cash to the parties at closing.

28. It was further part of the conspiracy that the co-conspirators collected a $3,000 short sale negotiation fee at closing.

29. It was further part of the conspiracy that ALOISIO GROUP profited by selling or "flipping" the Target Properties after the short sale to the victim homeowner or another pre-arranged buyer.

Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy and to accomplish its purpose, at least one of the following overt acts, among others, was committed by one or more of the co-conspirators in the District of Rhode Island and elsewhere:

30. On or about March 15, 2011, ALOISIO signed a materially false "Affidavit of Arm's Length Transaction," which he subsequently caused to be submitted along with a false Settlement Statement to Wells Fargo in support of ALOISIO GROUP's September 6, 2011 short sale purchase of 72-74 Princeton Avenue, Providence, RI.

31. On or about December 9, 2011, DIFRUSCIO tricked the victim homeowners of 18 Dunford Street, Providence, RI into transferring title of their property to DIFRUSCIO as trustee by falsely promising a plan that would assist them in paying off their house.

8

32. On or about December 29, 2011, ALOISIO signed a materially false "Affidavit of Arm's Length Transaction," which he subsequently caused to be submitted to PNC in support of ALOISIO GROUP's December 30, 2011 short sale purchase of 156-58 Merino Street, Providence, RI.

33. On or about March 7, 2012, ALOISIO and DIFRUSCIO induced F.B. to pay them $1,200 to negotiate a short sale of 1445 Broad Street, Providence, RI to them. ALOISIO and DIFRUSCIO agreed to "flip" the property to F.B.'s sister after their short sale purchase of the property.

34. On or about April 17, 2012, ALOISIO signed a materially false "Short Sale Purchase Contract Addendum," which he subsequently caused to be submitted to Bank of America in support of ALOISIO GROUP's May 11, 2012 short sale purchase of 38 Judith Street, Providence, RI.

35. On or about June 11, 2013, DIFRUSCIO wrote a check made payable to ALOISIO in the amount of $15,000 to transfer funds collected from the victim homeowner of 74 Pomona Street, North Smithfield, RI. ALOISIO induced the victim homeowner to pay these funds in exchange for an agreement to "flip" the property to the victim homeowner's relative after ALOISIO acquired the property in a short sale.

36. On or about July 18, 2014, ALOISIO and DIFRUSCIO caused C.H.'s signature to be forged on a Purchase and Sales Agreement for the short sale purchase of 152-54 Massachusetts Avenue, Providence, RI. DIFRUSCIO submitted the falsified

Purchase and Sales Agreement to Wells Fargo in support of a short sale purchase of 152-54 Massachusetts Avenue.

37. On September 11, 2014, DIFRUSCIO acquired 1445 Broad Street, Providence, RI in a short sale for $115,000. ALOISIO and DIFRUSCIO caused a false HUD-1 Settlement Statement to be submitted to 21st Mortgage Corporation in support of the short sale. The HUD-1 Settlement Statement falsely represented that F.B. held title of the property as "seller" and that ALOISIO GROUP acquired the property. ALOISIO and DIFRUSCIO did not disclose to 21st Mortgage their agreement to "flip" the property to F.B.'s sister.

38. On or about March 27, 2017, ALOISIO signed a materially false "Short Sale Affidavit," which he subsequently caused to be submitted to Fay Servicing by electronic mail in connection with ALOISIO GROUP's short sale purchase of 117 Shaw Avenue, Cranston, RI.

39. On or about June 30, 2017, ALOISIO signed a materially false "Affidavit of Arm's Length Transaction," which he subsequently caused to be submitted to JP Morgan in support of ALOISIO GROUP's short sale purchase of 90 Old Oak Avenue, Cranston, RI.

All in violation of 18 U.S.C. § 1349.

## COUNTS 2 – 5
(Bank Fraud)

40. The allegations contained in paragraphs 1 through 39 of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

41. On or about the dates set forth in the chart below, in the District of Rhode Island, the defendants named below, executed and attempted to execute a scheme to defraud the below-listed financial institutions and to obtain monies, funds, and property owned by and under the custody of the financial institutions by means of false and fraudulent representations and promises:

| Count | Date | Defendant | Financial Institution | Means of Executing Scheme to Defraud |
|---|---|---|---|---|
| 2 | 12/30/11 | Gregory Aloisio and John DiFruscio, Jr. | PNC Bank | Caused false documents, including a false HUD-1 Settlement Statement and false "Affidavit of Arm's Length Transaction," to be submitted to PNC Bank in support of a short sale of 156-58 Merino Street, Providence, RI |
| 3 | 5/11/12 | Gregory Aloisio and John DiFruscio, Jr. | Bank of America | Caused false documents, including a false HUD-1 Settlement Statement and false "Short Sale Purchase Contract Addendum," to be submitted to Bank of America in support of a short sale of 38 Judith Street, Providence, RI |
| 4 | 6/5/13 | Gregory Aloisio | Bank of America | Signed a false "Short Sale Purchase Contract Addendum" in support of Aloisio Group's attempted short sale purchase of 74 Pomona Street, North Smithfield, RI |

| 5 | 6/23/17 | Gregory Aloisio and John DiFruscio, Jr. | JP Morgan Chase | Caused false documents, including a false HUD-1 Settlement Statement and false "Affidavit of Arm's Length Transaction," to be submitted to JP Morgan Chase in support of a short sale of 90 Old Oak Avenue, Cranston, RI |

Each in violation of 18 U.S.C. §§ 1344 and 2.

## COUNT 6
(Wire Fraud)

42.  The allegations contained in paragraphs 1 through 39 of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

43.  From on or about a date unknown, but at least as early as January 1, 2011, to on or about a date unknown, but at least as late as October 30, 2017, defendants GREGORY ALOISIO and JOHN DIFRUSCIO, JR. devised and intended to devise a scheme to defraud distressed homeowners, prospective purchasers and financial institutions, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

44.  The Manner and Means of the defendants' scheme to defraud are substantially the same as the Manner and Means of the Conspiracy described in paragraphs 16 through 29 of this Indictment.

45.  On or about March 31, 2017, in the District of Rhode Island, the defendants, GREGORY ALOISIO and JOHN DIFRUSCIO, JR., for the purpose of executing the scheme described above, and attempting to do so, caused to be

12

transmitted by means of wire communication in interstate commerce signals and sounds, namely, an email from the law office of R.M. in Rhode Island to Fay Servicing, LLC personnel in Illinois. False documents in support of the short sale of 117 Shaw Avenue, Cranston, RI were attached to the email.

All in violation of 18 U.S.C. § 1343.

## COUNT 7
(Money Laundering)

46. The allegations contained in paragraphs 1 through 45 of this Indictment are re-alleged in this Count and are incorporated by reference as if fully set forth herein.

47. On or about March 30, 2017, M.M. sold 117 Shaw Avenue, Cranston, RI to ALOISIO GROUP for $180,000 in a short sale. ALOISIO caused false documents, including a false "Short Sale Affidavit," to be submitted to the lender in support of the short sale. The "Short Sale Affidavit" was false in that contrary to the assertions contained therein and unbeknownst to the lender, ALOISIO and M.M. had agreed to split the profits from ALOISIO GROUP's "flip" of the property after the short sale.

48. On or about August 17, 2017, ALOISIO signed a Purchase and Sales Agreement between ALOISIO GROUP and M.M.'s son, M.M. #2, for the sale of 117 Shaw Avenue for $285,000. M.M. #2 paid a deposit to ALOISIO in the amount of $9,975 in connection with the Purchase and Sales Agreement, and on or about October 25, 2017, ALOISIO GROUP sold the property to M.M. #2 for $285,000.

49. On or about August 29, 2017, ALOISIO wrote check #1364 made payable to M.M. in the amount of $4,987.50, bearing the false memo line "Legal fees," and drawn on Webster Bank Acct. #xxxx-xxxx-9139. Check #1364 was payment for one-half of the deposit received by ALOISIO in connection with the "flip" of 117 Shaw Avenue.

50. On or about August 29, 2017, in the District of Rhode Island, defendant

GREGORY ALOISIO

did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, namely the transfer of check #1364 made payable to M.M. in the amount of $4,987.50, bearing the false memo line "Legal fees," and drawn on Webster Bank Acct. #xxxx-xxxx-9139, which transaction involved the proceeds of specified unlawful activity, that is, wire fraud and conspiracy, in violation of 18 U.S.C. §§ 1343 and 1349, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

**FORFEITURE ALLEGATION UNDER 28 U.S.C. § 2461(c) & 18 U.S.C. § 981(a)**
(Bank Fraud, Wire Fraud, Conspiracy to Commit Bank and Wire Fraud)

Upon conviction of one or more of the bank fraud, wire fraud, and conspiracy to commit bank and wire fraud offenses alleged in Counts 1-6 of this Indictment, defendants GREGORY ALOISIO, ALOISIO GROUP, LLC, and JOHN DIFRUSCIO, JR., named in the Count of conviction, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1343, 1344, and/or 1349, and a sum of money equal to the total amount of proceeds obtained as a result of the offenses.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s), cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

All in accordance with 18 U.S.C. § 981(a)(1), as incorporated by 28 U.S.C. § 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

## FORFEITURE ALLEGATION UNDER 18 U.S.C. § 982(a)
(Money Laundering)

Upon conviction of the money laundering offense alleged in Count 7 of this Indictment, defendants, GREGORY ALOISIO and JOHN DIFRUSCIO, JR. shall forfeit to the United States of America pursuant to 18 U.S.C. § 982(a)(1), all right, title, and interest in any and all money and other property involved in each offense in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and all property traceable to such property, and a sum of money equal to the total amount of money involved in each offense, or conspiracy to commit such offense, for which the defendant is convicted.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s), cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

All in accordance with 18 U.S.C. § 982(a)(1), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL:

Grand Jury Foreperson

RICHARD B. MYRUS
Acting United States Attorney

SANDRA R. HEBERT
Assistant U.S. Attorney

Date: March 5, 2021